IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>) **CASE NO. PX-19-236**<br>v.                                          )<br>)<br>)<br>**MARTEL RAYSHARD REEVES** )<br>   **Defendant**                             ) | |

### TACTICAL GEAR HEADS' REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO QUASH THIRD PARTY SUBPOENA

Tactical Gear Heads, LLC ("TGH"), through undersigned counsel, hereby files this Reply to the Government's Response to TGH's Motion to Quash Subpoena.

As the government concedes in its Response in Opposition to the Motion to Quash ("Gov. Opp'n"), TGH did not sell the Polymer 80 kit at issue and has no direct relation to any issue in the underlying case. Despite this undisputed fact, the government persists in enforcing its subpoena, arguing that evidence regarding any potential sales by TGH to *any* Maryland resident after the date of defendant's arrest is relevant to the government's novel and broad argument that possession of "ghost guns"[1] is "part of a class of activity that has a substantial effect on interstate commerce." Gov.'s Opp'n at 2.

While the government's scorched earth argument as it applies to this one defendant's alleged possession of a firearm is unique, the simple fact is that the argument it makes does not justify the subpoena it has issued pursuant to Federal Rule of Criminal Procedure 17(c). First, there

---

[1] The government uses the term "ghost gun" to "refer to a firearm that does not have a serial number engraved on the frame or receiver, making it difficult for law enforcement to determine where it was manufactured, by whom, when, and to whom it was sold, shipped, or transported." Government's Response to Defendant's Pretrial Motions [Docket Entry #29], at 21.

1

is no possible nexus between TGH and the defendant. Second, for all the reasons articulated by the defense, the government's "interstate commerce" argument ignores the statutory definition of a "firearm" contained in 18 U.S.C. § 922(g), and invites this Court to re-write the statute in a way Congress has not to date pursued.[2] Third, even if the Court accepts the government's argument and finds the subpoena seeks information that is relevant and admissible, the government still has not cleared the specificity hurdle because it did not and does not know whether the documents actually exist. Finally, as the government has acknowledged in its pleadings pertaining to the defendant's motion to dismiss, it already possesses the information necessary to make the broad argument it seeks to have this Court decide as a matter of first impression. The government's continued pursuit of these documents from TGH is, at this juncture, purely baseless. For these reasons, and the reasons stated in its Motion to Quash, TGH respectfully requests that this Court quash the subpoena.

## ARGUMENT

Both TGH and the government agree that the standard for determining the appropriateness of the government's subpoena is found in *United States v. Nixon*, 418 U.S. 683 (1974). Pursuant to *Nixon*, the government must establish that the documents requested by the subpoena meet the requirements of (1) relevancy; (2) admissibility; [and] (3) specificity. *United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (quoting *Nixon*, 418 U.S. at 700).

The parties differ, however, as to whether the government has satisfied these requirements. While the government contends that its decision to manufacture a broad commerce clause argument entitles it to the information it seeks, the reality is that the government's argument does not transform its request into an appropriate one under Rule 17(c). In short, despite the

---

[2] The Polymer 80 kit, alone, would not constitute a "firearm" under the statute. *See* 18 U.S.C. § 921(a)(3) and 27 C.F.R. § 479.11.

2

government's innovative legal maneuvering, it still fails to clear any of the *Nixon* requirements and its subpoena should be quashed.

### I. The Government's Interstate Commerce Argument is Irrelevant to the Charges in the Underlying case.

The law is clear: Materials sought pursuant to Rule 17(c) must relate to the offenses charged in the case. *See, e.g., Nixon*, 418 U.S. at 700 (noting that there "was a sufficient likelihood that each of the tapes contains conversations relevant to the offense charged in the indictment.").

The single-count indictment in this case charges the defendant with possession of firearm and ammunition pursuant to 18 U.S.C. § 922(g). That provision states, in pertinent part:

It shall be unlawful for any person –

(1) Who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year –

To ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Under the clear reading of the statute, TGH's documents do not have any relevance to this matter, as TGH did not sell any gun kit to the defendant in this case.[3] The date TGH made its first shipment of goods to Maryland occurred *after* the date of defendant's arrest. Any records in its possession are therefore not relevant to the issue of whether the defendant committed a crime, regardless of the legal theory the government relies upon to make its case.

However, the government has attempted to create relevancy by arguing that the defendant's "possession of a ghost gun was part of a *class of activity* that has a substantial effect on interstate commerce, and that TGH's sales of ghost gun kits in Maryland [is] relevant to establishing such

---

[3] The government charged the defendant with both unlawful possession of a firearm and ammunition in a single count indictment. There do not appear to be any impediments to the government establishing the ammunition traveled in interstate commerce.

an effect."[4] Gov. Opp'n at 2 (emphasis added). The government's argument is primarily based upon *Gonzales v. Raich*, 545 U.S. 1, 22 (2005), in which the Supreme Court held that *Congress* could regulate the intrastate sale and possession of marijuana pursuant to its Commerce Clause authority if the individual activity, "in the aggregate, substantially affect[s] interstate commerce . . . ." Notably, the *Raich* court did not have to decide whether the activity substantially affected interstate commerce, "but only whether a 'rational basis exists for so concluding" existed. *Id.* at 22 (citations omitted). *See also United States v. Hosford*, 843 F.3d 161, 171-72 (4th Cir. 2016) (holding that the Gun Control Act of 1968 was "a valid exercise of Congress's power under the Commerce Clause" because "Congress had a rational basis to believe that leaving the intrastate firearm markets unregulated would affect the interstate market or draw firearms purchased intrastate into the interstate market.")

Relying upon *Raich, Hosford,* and similar Commerce Clause cases, the government asks this court to do what Congress has not – regulate the sale of ghost gun kits. The government leaps to the conclusion that because *Congress can* regulate intrastate activity that "substantially affects" interstate commerce, *this Court* should substitute its judgment for that of Congress, and find that the "possession of intrastate ghost guns taken in the aggregate affects interstate commerce," Government's Amended Sur-Reply to Defendant's Pretrial Motion, at 1 [Docket Entry No. 42] (Gov.'s Sur-Reply) at 1. The government cites no authority that directly supports this proposition.

While the cases the government cites speak to Congress' broad authority pursuant to the Commerce Clause, they do not provide a legal basis upon which the Court can re-write 18 U.S.C.

---

[4] The government asserts that "[e]vidence of the rising volume of ghost gun kits sales in Maryland before and after the Defendant's arrest is relevant to showing the extent of such displacement and augmentation of the possession of conventional firearms by the possession of intrastate ghost guns." Gov. Opp'n at 7. The government has not, however, articulated how the character of interstate commerce *after* the date of the defendant's arrest is relevant to the character of interstate commerce *at the time* the defendant allegedly committed the crime, and it cites no authority that would support this notion.

4

§ 922(g) in the manner in which the government suggests. For the reasons persuasively argued by the defense in its Reply Brief [Docket Entry #31], the fact that Congress can regulate intrastate activity that substantially affects interstate commerce, does not mean that it has done so in 18 U.S.C. § 922(g). Notably, the statute, as written, prohibits certain classes of people from possessing a firearm. The term "firearm" does not include the Polymer 80 kit. Thus, whether or not TGH has sold Polymer 80 kits in Maryland is irrelevant as the statute does not criminalize these sales and Congress has not chosen, to date, to regulate this activity. *See generally* Defendant's Reply Brief ("Def.'s Reply") at 4-9. None of the cases cited by the government support the notion that this Court can and should take a step that Congress has not taken and expand 18 U.S.C. § 922(g) to include the intrastate possession of "ghost gun kits."

According to the plain words of the statute, it is clear that the information the government seeks from TGH is irrelevant and inadmissible. The government's decision to pursue a legally innovative - but untenable - argument is insufficient to require TGH to provide documents and information that are not relevant to the issues in the underlying case. The subpoena should be quashed.[5]

## II. The Government's Subpoena is a Fishing Expedition.

Even were this Court to embrace the government's novel argument, and conclude that the documents the government seeks are admissible and relevant, *Nixon's* specificity requirement still dooms the government's request. When the government issued its Rule 17(c) subpoenas, it had no idea whether the information it sought existed or whether the information would support its intrastate/interstate commerce argument. The government did not know whether in fact TGH sold guns in Maryland. Rather it decided to embrace a unique theory of prosecution and hoped it would

---

[5] TGH also maintains that the government's request for information regarding any type of gun kit beyond the Polymer 80 that was sold to the defendant in this case continues to be irrelevant.

obtain the evidence to support it. Indeed, the government points to the affidavit submitted by TGH as the government's evidence that TGH has sold gun kits in Maryland, implicitly admitting that it had no factual basis to conclude that TGH had any sales in Maryland. This is clearly an improper use of Rule 17(c). *Ging-Hwang Tsoa,* 2013 WL 5837631, at *2 ("Rule 17(c) is not a general discovery device, and to that end, the party requesting the information must identify with specificity what is sought.").[6]

The government's haphazard use of Rule 17(c) is further displayed by the fact that it apparently arbitrarily decided which companies would receive a subpoena. Gov. Sur-reply at 4 n.4 ("The Government did not subpoena all businesses in the United States that engage in the manufacturing, distributing, or selling of ghost guns."). The government is utilizing Rule 17(c) as a general discovery device in the hope of uncovering information to support its unprecedented argument. However, the *Nixon* hurdles are designed to prevent litigants – both the government and defendants alike – from misusing Rule 17(c) as a tool for investigation or discovery. The government's subpoena was no more than a quest to ascertain whether information pertinent to its argument existed, and fails to meet *Nixon's* specificity requirement. *See, e.g., United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) ("*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things[,]" and finding that although the information sought appeared to be "highly relevant and . . . arguably admissible" the specificity requirement was not met where party was "unable to verify whether the requested material even exists."). *See also United State v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) ("We have emphasized that Rule 17(c) … is not a discovery device.") (internal citations

---

[6] On this point, the email exchange between counsel for TGH and the Assistant United States Attorney further reveals that the government had no concrete basis for knowing when, or if, TGH had sold any gun kits in Maryland. *See* Exhibit 1 (Emails dated March 5-9, 2020).

omitted); *United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006) ("The specificity requirement ensures that a Rule 17(c) subpoena will not be used as a 'fishing expedition to see what may turn up.' ") (internal citations omitted).

### III. The Government Possesses the Information Needed for the Motion Hearing.

The government's subpoena should be quashed as unreasonable and oppressive. A subpoena is "unreasonable or oppressive" where the government fails to establish that it cannot "properly prepare for trial without such production and inspection in advance of trial . . . ." *Nixon*, 418 U.S. at 699-700. The government's subpoena should be quashed because the government has sufficient information to present its argument at the motion hearing.

The government possesses sufficient information to advance its "interstate commerce" argument before the Court at the motion hearing. In addition to the records it has obtained from Polymer 80, the manufacturer of the gun kit involved in this case, the government has obtained records from at least three non-party gun retailers: Brownells, Inc., MidwayUSA, and Fred's Outdoors. Gov.'s Sur-Reply at 3.[7] According to the data the government has received, over the past four years "2,466 ghost gun parts were sold . . . to an individual in the State of Maryland, with cumulative sales of over $1 million." *Id.* at 4. In addition, the government has now obtained an expert in economics, Dr. John W. Mayo, to "testify at the pretrial motions hearing regarding this economic effect that ghost guns have on the market for handguns, which are bought and sold in interstate commerce." *Id.* at 4. The government has even attached a declaration from Dr. Mayo in which he sets forth the analysis of the data he has received and he has already concluded "that the

---

[7] It appears these non-parties were all permitted to submit the documents in advance of the hearing, in lieu of appearing at the hearing. Whether this was appropriate is not clear. *See, e.g., United States v. Binh Tang* Vo, 78 F. Supp. 3d 171, 179 (D.D.C. 2015) (Pre-trial production of documents under Rule 17 is only permissible when ordered by the Court). However, the government has now rescinded the offer to permit TGH to submit documents in lieu of appearance. *Compare* Motion by Tactical Gear Heads to Quash Third Party Subpoena, Ex. B (subpoena dated 11/22/2019) with Ex. E (subpoena dated 3/11/2020). In the event the Court enforces the subpoena, TGH would request that the Court permit it to comply with the subpoena in a similar manner to the other non-parties.

addition of ghost guns to the market for handguns reduces the prices of conventional handguns . . . ." *Id.* at (citing Mayo Affidavit ¶¶ 12-13).[8] Dr. Mayo's declaration does not indicate that he is in need of any additional data to make his conclusions. Nor does the government contend in its pleadings that it requires more information to fully present its argument.

Given the amount of information the government has received – which was sufficient for an economics expert to reach the government's desired conclusion – the government's subpoena directed to TGH should be quashed.

    **IV.**    <u>**A Protective Order is Warranted if the Subpoena is Enforced.**</u>

TGH maintains that the government's subpoena is improper under Rule 17(c) for multiple reasons. The subpoena seeks information that is not relevant. It seeks documents that do not directly pertain to the charges or the defendant in the case. The subpoena seeks documents that post-date the charges in the case and seeks information that does not pertain to the type of gun kit the defendant allegedly possessed. The government has already obtained information sufficient to make its argument at the motion hearing and has provided no explanation why TGH's sales in particular are needed to proceed with the hearing. Furthermore, the government has improperly used Rule 17(c) as a general discovery tool because it had no knowledge whether the requested documents even existed.

However, in the event the Court determines that the subpoena meets the *Nixon* requirements, TGH has requested a protective order regarding its sales data, which the government agrees is not publicly available. Gov.'s Opp'n at 7 n.3. The government contends no protective

---

[8] Notably, Dr. Mayo excluded ghost gun rifle kits in his analysis, which is one of the categories of documents the government continues to seek from TGH.  Gov's Sur-Reply, Ex.. B (Mayo Declaration), ¶ 12.

order is warranted because there has been no "good cause showing of harm." Gov's Opp'n at 11. The government is not well-informed.[9]

>Federal Rule of Criminal Procedure 16(d)(1) provides

>>At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

"Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed." *United States v. Johnson*, 191 F. Supp. 3d 363 (M.D. Pa. 2016) (quoting Fed. R. Crim. P. 16, Advisory Committee Notes, 1974 Amendment (citing *Will v. United States*, 389 U.S. 90 (1967)). In this case, TGH has requested a protective order to limit the government's dissemination of the information to the present case. The Myers affidavit has addressed the competitive harm TGH may face in the event of the government's unguarded disclosure. However, in the event the Court will enforce the subpoena, and does not find the current affidavit sufficient, TGH would respectfully request the opportunity to submit a more thorough statement to the Court *ex parte* or otherwise permit TGH to supplement its submission.

## CONCLUSION

For the reasons set forth above, as well as the arguments made in its initial motion, as well as any other arguments that the Court may consider at a hearing in this matter, Tactical Gear Heads, LLC, respectfully requests that the Court quash the third party subpoena issued by the United States.

---

[9] Despite the government's unsupported assertion that TGH's "*raison d'etre*" for seeking to quash the subpoena is protection of its sale data, Gov's Opp'n at 10, TGH's sole and main purpose in moving to quash the subpoena is to prevent the government's misuse and abuse of Rule 17(c).

                          Respectfully Submitted,

                          WILLIAM MARTIN

By:          */s/*
                          William R. Martin,
                          U.S. District Court of MD Bar No. 15051
                          Michelle N. Bradford, (*Pro Hac Vice*)
                          DC Bar No. 491910
                          Barnes & Thornburg LLP
                          1717 Pennsylvania Avenue, NW
                          Washington, DC 20006
                          Phone: 202-408-6922
                          Fax: 202-289-1313
                          bmartin@btlaw.com
                          mbradford@btlaw.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that this Motion to Quash Third Party Subpoena was filed electronically through the Court's ECF filing system this 9<u>th</u> day of April, 2020, thereby providing service electronically upon all parties in this case.

                                                            */s/*
                                                     William Martin