**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case No. 19-cr-00236-PX** |
| | **:** | |
| **MARTREL R. REEVES,** | **:** | |
| **Defendant.** | **:** | |

## <u>MARTREL REEVES' MEMORANDUM IN AID OF SENTENCING</u>

**September 9, 2021**

**Glenn F. Ivey, Esquire**
**Bar No.  06187**
**Ivey & Levetown LLP**
**6411 Ivy Lane, Suite 304**
**Greenbelt, MD 20770**
**(301) 537-1451**
**ivey@iveylevetown.com**

I.    **INTRODUCTION**

Martrel Reeves comes before this Honorable Court ashamed of, and sincerely apologetic about the magnitude of his mistakes that now confront him.  Because of the mistakes that have brought him to this moment, he is now faced with not only the possibility of remaining incarcerated, but also the possibility of being unable to provide for his family.  He also understands that he has let down the many young men in his community for whom he has become a mentor and supporter.

Mr. Reeves fully understands that his criminal offenses do not represent the kind of person that he wants to be in the future for his family, for his community, and for himself.  He humbly asks this Court for mercy and compassion.  Through undersigned counsel, Mr. Reeves respectfully submits this Memorandum in support of the requested sentence of time served.[1]  Such a sentence is "sufficient, but not greater than necessary," to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

II.    **THE GUIDELINES CALCULATION**

**Criminal History Category Should Be IV Rather Than V**

The Presentence Investigation Report ("PSR") calculates Mr. Reeves' total criminal history score to be a ten (10), which established a criminal history category of V.[2] To reach that score, the PSR adds one point for a possession of marijuana offense committed in 2010, where the sanction imposed by the court was a loss of Mr. Reeves' license for six months and a fine.[3] This

---

[1] According to the Presentence Investigation Report ("PSR"), "The defendant was held in custody on a related state case from July 8 to July 10, 2018.  He appeared for an Initial Appearance…on May 23, 2019, and was ordered detained by agreement."  ECF 74 at 1.

[2] PSR at ¶ 43.

[3] *Id.* at ¶ 31 (*citing* § 4A1.1(c)).

offense is overrepresented in calculating Mr. Reeves' criminal history score, and to great effect: this additional point increases Mr. Reeves' Criminal History Category from IV to V, which elevates his Guideline imprisonment range to 51-63 months.[4]   This Court should reject this approach.

The Sentencing Commission's Introductory Commentary to the § 4A1.1 enhancements for repeat offenders makes clear that while age and drug use correlate with repeat offense behavior, for policy reasons, these factors were not included in setting the enhancement in this section.   In other words, § 4A1.1 does not consider one's age and drug use at the time prior offenses occurred. This failure has produced an especially harsh result for Mr. Reeves, who committed this marijuana possession offense at age nineteen and was convicted *in absentia*.[5]   In other words, § 4A1.1 does not consider one's age, or any drug use *vel non*, at the time the prior offenses occurred.[6]

---

[4] *Id.* at ¶ 71.

[5] The judiciary's reinvigorated role in sentencing is especially important with respect to assessing the risks of recidivism related to age, given the Sentencing Commission's findings that

> there is no correlation between recidivism and Guidelines' offense level.  Whether an offender has a low or high guideline offense level, recidivism rates are similar.  While surprising at first glance, this finding should be expected as the Guidelines' offense level is not intended or designed to predict recidivism.

United States Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, 15 (May 2004).   Thus, in this respect, the guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C).  Fortunately, *United States v. Booker*, 543 U.S. 220 (2005), has freed the judiciary to remedy this inconsistency.

[6] As the Sentencing Commission has recently pointed out, extensive neuroscience research now shows that brain development in humans is not complete until around 25 years of age.  While the commission also points out that there is considerable debate on the issue, and that such research cannot be meaningfully generalized, there are "a number of points on which researchers in this area generally agree. First, researchers agree that the prefrontal cortex is not complete by the age of 18, which is the legal age of majority in most state jurisdictions and in the federal system. Second, researchers agree that development continues into the 20s.  Third, most researchers reference 25 as the average age at which full development has taken place but note there will be significant variation from person to person." United States Sentencing Comm'n, *Youthful Offenders in the Federal System*, 7 (May 2017) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf.

Under these circumstances, it is more than reasonable to conclude that if the Guidelines accounted for age and drug use, this conviction would have been excluded or otherwise modified with respect to the § 4A1.1 enhancements. Moreover, the sentence imposed—a fine and a suspended license—suggests that even at that time, the court viewed this offense as something more akin to a traffic offense than a criminal offense. Finally, after Mr. Reeves was sentenced for this offense, the Commonwealth of Virginia decriminalized marijuana possession, enacting instead a civil penalty of no more than $25 for possession of up to an ounce of marijuana, with no jail time.[7] The penalty that was imposed on Mr. Reeves when he was nineteen years old bears a striking resemblance to Virginia's current civil penalties. We ask this Court to treat that conviction accordingly.

Without this additional point, Mr. Reeves' Criminal History score would be a nine (9) instead of a ten (10). This would bring his Criminal History Category down from V to IV, lowering his Guideline Range from 51-63 months to 41-51 months.[8] Mr. Reeves will be seeking a Criminal History Category of IV at his sentencing.

---

[7] Virginia Governor Ralph Northam approved legislation (Senate Bill 2 | House Bill 972) decriminalizing marijuana possession offenses. The law reduced penalties for offenses involving the possession of up to one ounce of marijuana to a civil violation – punishable by a maximum $25 fine, no arrest, and no criminal record. It also explicitly seals past marijuana convictions from employers and school administrators. The law took effect on July 1, 2020. Separate legislation, SB 5013, signed into law in October 2020 permits those summoned to prepay their fine rather than having to appear in person for a court appearance.

[8] Mr. Reeves' Criminal Offense score would be 18, because the parties agree that the base offense level is 20, and the Government "does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. 3E1.1(a) based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct." ECF 68 at ¶ 6(a) and (b); See PSR at ¶¶ 4, 18, 22, 24 and 25.

This Court has the authority to disagree with a guideline as a matter of policy. Because the Guidelines are now advisory, as a general matter, "courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."[9]

## III.    THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range[10], it may not treat that range as mandatory or presumptive,[11] but as "one factor" among several" to be considered in imposing an appropriate sentence under § 3553(a).[12] The Court must "consider all of the § 3553(a) factors…make an individualized assessment based on the facts presented,"[13] and explain how the facts relate to the purpose of sentencing.[14] The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing."[15]

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[16] Permitting sentencing courts to consider the widest possible breadth of information about a

---

[9] *Kimbrough v. United States*, 552 U.S. 85, 101-02 (2007) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations")).

[10] *Gall v. United States*, 552 U.S. 38, 39 (2007).

[11] *Id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009).

[12] *See Kimbrough*, 552 U.S. at 90.

[13] *See Gall*, 552 U.S. at 49-50.

[14] *Id.* at 53-60; *see also Pepper v. United States*, 562 U.S. 476, 490 (2011).

[15] *See Pepper*, 562 U.S. at 493.

[16] *Koon v. United States*, 518 U.S. 81, 113 (1996).

defendant "ensures that the punishment will suit not merely the offense but the individual defendant."[17]

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)."[18] Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher."[19]

## IV.    18 U.S.C. § 3553(a) FACTORS

In no way diminishing Mr. Reeves' illegal conduct in this case, for which Mr. Reeves has pleaded guilty and for which he accepts full responsibility, a further variance, pursuant to the 18 U.S.C. § 3553(a) factors, is warranted in this case.  Section 3553(a)(1) provides a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'"[20] The command is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime."[21] It is similarly consistent with Congress' express directive that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct."[22]

---

[17] *See Pepper*, 562 U.S. at 488 (*citing Wasman v. United States*, 468 U.S. 559, 564 (1984)).

[18] *United States v. Forman*, 436 F.3d 638, 644, n.1 (6th Cir. 2006).

[19] *United States v. Ministro-Tapia*, 470 F.3d 137 (2nd Cir. 2006).

[20] *See Gall*, 552 U.S. at 50, n. 6.

[21] *See Pepper*, 562 U.S. at 487-488 (*citing Williams v. New York*, 337 U.S. 241, 247 (1949)).

[22] *Id.* at 488 (*citing* 18 U.S.C. § 3661).

Although Mr. Reeves has made some serious mistakes in his young life—including the matter that brings him before this Court—he has also demonstrated extensive good works, especially in the impoverished communities from which he comes. We ask the Court to consider not only his criminal history, but his community history as well.[23]

A. Mr. Reeves' Personal History and Characteristics

 1. *Overcoming A Tough Childhood*

Mr. Reeves' childhood was "no crystal stair."[24] Mr. Reeves grew up in and remains connected to an apartment complex called the Pentacles. Since the height of the crack wars in the 1980s, it has been one of the most dangerous neighborhoods in Washington, D.C.

He was raised primarily by his single mother, Pamela Reeves, who works as a social worker. They lived in public housing until his mother graduated from college. She worked hard to provide emotional and financial support for her three sons.

His father provided minimal contribution during Mr. Reeves' childhood. He had spent some summers with his father in Danville, Virginia, but that ended when Mr. Reeves was about ten years old and his father never came to pick him up for the summer. At that point, the contact between the two of them ended and he began to feel that his father had abandoned him.

By his early teens, Mr. Reeves had started consuming alcohol, lost interest in school, started hanging out with "the wrong crowd," and left his mother's home. Fortunately, Mr. Reeves' skills as a rapper and musician provided him with direction and focus and helped him provide his family with an economic opportunity for a better life. He became the subject of media profiles in the *Washington Post*, *City Paper*, and WJLA News. He also was mentored by successful

---

[23] *United States v. Cooper*, 394 F.3d 172, 178 (3d Cir. 2005).

[24] Langston Hughes, "Mother to Son," *The Collected Works of Langston Hughes* (2002).

musicians and began to collaborate with artists such as Chris Brown, Rick Ross, YG, Master P, Chief Keef, and Wale.[25]  Over time, Mr. Reeves became "an asset to the American music industry, and his years of hard work have been validated with him having a number of songs with millions of plays."[26]

His rise to success has not shielded him completely from the dangers of life.  He was stabbed in the leg during an argument at a nightclub in 2011.[27]  He has also been shot, and developed PTSD as a result.[28]  Finally, the mother of his oldest child died suddenly from a heart attack at age 23.[29]

### 2. Community Service and Mentoring

Mr. Reeves has "been seen for what he has, but not for what he does to uplift his community."[30]  Despite his success in the music business, Mr. Reeves has remained connected to his childhood neighborhoods and has consistently made efforts to help the people who live there. In other words, Mr. Reeves did not forget where he came from, even after he became famous and successful.  Even "after his celebrity grew," Mr. Reeves continued to support "turkey drives, peace

---

[25] Mr. Reeves has been a very successful recording artist.  He has recorded a song with over 12 million views on YouTube and has been downloaded nearly 4 million times on Sound Cloud.  From 2009-2016, Mr. Reeves released a solo mix tape every year,  and has over 240 tracks on Sound Cloud.  His career has also been followed closely on Internet blogs like World Star Hip Hop.  He has 22,700 followers on Instagram and 128,600 followers on Twitter.  He has over 74,000 subscribers on YouTube and nearly 61,000 followers on Sound Cloud.  Mr. Reeves has also been highly successful as a performing artist at live shows.  He performed before 300,000 at the South by Southwest festival in Austin, Texas, and before 80,000 at a festival in the parking lot of RFK Stadium in Washington, DC.

[26] F. Santamaria, *Character Reference Letter*.  Letters written in support of Mr. Reeves are attached as Exhibit 1 and are ordered alphabetically by last name of the author.

[27] PSR at ¶ 64.

[28] ECF 74 at 21 (PSR).

[29] PSR at ¶ 61.

[30] R. Cooper, *Character Reference Letter*.

8

walks, and community beautification" across the city over the past decade.[31]  Mr. Reeves has been

a positive influence on members of his community.  As District of Columbia City Councilmember

Trayon White noted,

> I have seen Mr. Reeves give back to the community in many ways.  He has participated in food drives, youth violence intervention and has always made himself available to support community functions with other community activists and me.  I have no doubt that Mr. Reeves will be able to positively impact the community if given another chance.[32]

Mr. Reeves has also worked with the faith community to assist his community.  As one

minister noted, "he has given to families and youth in need.  Whether the need was food, clothing,

housing or simply encouragement, Mr. Reeves has a generous heart and a gift to empower others

to improve themselves."[33] Mr. Reeves worked closely with ManPower DC, helping to "motivate

and create outlets to each youth and young adult," in support of their "workforce training programs,

trade schools, financial literacy…housing opportunities…and education assistance."[34]

Mr. Reeves has also mentored youth interested in pursuing careers in the music industry.

He helped one young man by making him a part of his team when Mr. Reeves got his first major

record deal:  "He mentored me and had me around for all of the meetings, so I could learn the

music business as a manager of artists and to help them with their careers."[35]  Mr. Reeves included

this young man "in meetings with Atlantic records and other major labels.  He taught me how to

interact with other businessmen."[36]  As a result of Mr. Reeves' influence, this young man started

---

[31] T. Lewis, *Character Reference Letter*.

[32] Hon. T. White, *Character Reference Letter*.

[33] Rev. Dr. S. Styles-Anderson (Temple of Praise Church), *Character Reference Letter.*

[34] J. Jenkins (Founder and CEO of ManPower DC), *Character Reference Letter.*

[35] C.J. Anderson, *Character Reference Letter.*

[36] *Id.*

his own record label "involved in major negotiations with Jay-Z/Rock Nation [and] Sony Music." "I owe my ability to successfully work in this arena" to Mr. Reeves.[37] Mr. Reeves also worked with an organization as a "peer mediator" who "was doing so many great things in some of the most vulnerable communities" in our region and "helped to deescalate many violent situations."[38]

Ironically, Mr. Reeves has also helped incarcerated men transition back into the community. Marquez Beasley describes himself as a "troubled youth, [h]omeless" and "heading down the [w]rong path." Mr. Reeves helped him "[r]ehab from the drugs he was [t]aking" and to "obtain his first job opportunity".[39] Another young man notes that Mr. Reeves "definitely helped me turn my life around" after he made a "similar mistake" as Mr. Reeves. "[Mr. Reeves] reached out to me and taught me to stay on the right track. He encouraged me to be a better father, son and overall human being. My current success is an example of the impact that he had."[40]

### 3. An Anchor for His Family

Mr. Reeves has also been a pillar for his family. His aunt notes that "he has two daughters that he adores. [His] girls truly love their dad and need him."[41] A local minister noted that, in addition to mentoring young men in the community, Mr. Reeves "is a committed father and I have watched his interaction with his daughter. She adores Mr. Reeves and has truly been affected by the separation."[42] Mr. Reeves also has provided substantial financial support for his

---

[37] *Id.*

[38] J. Davis (Exec. Dir. of the Love More Movement), *Character Reference Letter.*

[39] M. Beasley, *Character Reference Letter.*

[40] *See* C.J. Anderson.

[41] D. Bennett, *Character Reference Letter*
.

[42] Rev. Dr. S. Styles-Anderson, *Character Reference Letter*.

extended family and looks forward to returning to that role when he is able to resume his music career.[43]

B. The Requested Sentence is Sufficient to Satisfy the Purposes of Punishment

Mr. Reeves has already served approximately 28 months in jail. The requested sentence of time served will fulfill the goals of 18 U.S.C. § 3553(a)(2). Specifically, the punishment reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. This period of incarceration affords more than adequate deterrence while also protecting the public from further crimes. Mr. Reeves has an extensive record, but even though he has repeatedly been a victim of violent crime, he has never committed an act of violence in any of his prior offenses.

Finally, it appears that Mr. Reeves has reached a point in his life where he realizes that his life may pass him by if he continues to break the law. He misses his children and extended family, and his music career may languish now that he is in his thirties and has been unable to produce new music for more than two years. As one friend wrote, "this latest valley has caused him to fully understand that ... we must pay the consequences for our actions" and "that he has to make better decisions moving forward as a father, as a role model and as a citizen."[44] One of this proteges, whom Mr. Reeves helped get back on the right track after a jail stint, agreed:

> I have spoken with [Mr. Reeves] regarding his decision that led to this charge and this moment. It is a source of intense regret, remorse and embarrassment for him. He is a family man; one of integrity, and this incident is definitely uncharacteristic of his focus at the time of his arrest. It is an incident, which he would like to take

---

[43] The PSR alleges that Mr. Reeves owes $175,294 in child support. PSR at ¶ 61. Apparently, this is based on the case of *Bowman v. Reeves*, Prince George's County Circuit Court Case No. CAS11-09421. Mr. Reeves was not aware that a child support order had been put in for that or any other case, he disputes paternity of that child, and he is retaining counsel to address the matter.

[44] T. Lewis, *Character Reference Letter*.

responsibility for[,]move forward . . . with his career, and make a positive contribution to our society.[45]

We ask the Court to give him that opportunity.

Respectfully submitted,



Glenn F. Ivey, Esq.
Bar No. 06187
Ivey & Levetown LLP
6411 Ivy Lane, Suite 304
Greenbelt, MD 20770
M: (301) 537-1451
ivey@iveylevetown.com

*Attorney for Defendant Martrel Reeves*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2021, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via CM/ECF to Assistant United States Attorneys Rajeev R. Raghavan and Erin Pulice.

_____/s/_____
Glenn F. Ivey, Esq.

---

[45] C.J. Anderson, *Character Reference Letter*.