**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **CRIMINAL NO. PX-19-236** |
| **MARTREL REEVES,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**
**AND RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, hereby submits the Government's Memorandum in Aid of Sentencing for Martrel Reeves and in Response to Defendant's Sentencing Memorandum.  Defendant Martrel Reeves ("Reeves") is scheduled to be sentenced on September 22, 2021, at 2:00 p.m.  For the reasons set forth below, the Government submits that a sentence of **55 months in prison, followed by 3 years of supervised release**, as recommended by the U.S. Probation Office ("Probation"), is a sentence sufficient but not greater than necessary to satisfy the goals of sentencing.

I.     **Background**

On May 8, 2019, Reeves was indicted on one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  Reeves had his initial appearance on May 23, 2019 and was detained by agreement pending resolution of this criminal case.

Pursuant to a written plea agreement entered on September 22, 2020, the Defendant pled guilty to Count One of the Indictment, which charged the Defendant with felon in possession of a firearm and ammunition.  (ECF No. 68 ("Plea").)  After accepting the Defendant's plea to these counts and adjudging him guilty, the Court scheduled sentencing for January 5, 2021, and directed

Probation to prepare the Pre-Sentence Investigation Report ("PSR"), which was filed on November 23, 2020.  (ECF No. 74 ("PSR").)  Following a motion from defense counsel, sentencing was rescheduled to September 22, 2021.

In the plea agreement, the parties agreed that the base offense level is **20**, because the Defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense. (*Id.* ¶ 6(a).)  The Government did not oppose a **2**-level reduction for acceptance of responsibility, but the Government will not move for an additional **1**-level reduction because the Defendant did not timely notify the Government of his intention to enter a plea of guilty.  (*Id.* ¶ 6(b)).  The final offense level is therefore **18**.  Probation's calculation of the offense level is in line with the plea agreement.  (PSR ¶¶ 17-25.)  The parties did not reach agreement as to the Defendant's criminal history.

## II.    <u>Criminal History Score and Category</u>

The Government agrees with Probation's calculation that the Defendant's criminal history score is **10** and his criminal history category is therefore **V**.  The Defendant seeks a downward departure by asking the Court to ignore his 2010 conviction in Arlington, Virginia, for possession of marijuana.  (ECF No. 76 at 3; PSR ¶ 31.)  Section 4A1.3 of the United States Sentencing Guidelines (the "Sentencing Guidelines") sets forth the standard for a downward departure, which requires reliable information that indicates that the defendant's criminal history substantially over-represents the seriousness of his criminal history.  U.S.S.G. § 4A1.3(b)(1).  By way of example, the corresponding Application Note states that "if [] the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period," a downward departure may be justified.  U.S.S.G. § 4A1.3

app. note 3.  That is not the case here.  The Defendant's conviction for possession of a controlled substance in 2010 is one of several criminal convictions encompassing the last ten years.  (PSR ¶¶ 30-40.)  Included in this lengthy criminal history is a conviction for possession with intent to distribute one-and-a-half to five pounds of marijuana.  (PSR ¶ 36.)  Six years after his conviction for possession of marijuana, this second conviction demonstrates the Defendant's escalating criminal behavior, which the Government will discuss more fully below.[1]  This lengthy and serious criminal history is at odds with the standard for a downward departure set forth in the Sentencing Guidelines.

In so far as the Defendant asks the Court to effectively ignore his prior criminal conviction because the possession of marijuana is now decriminalized in Virginia, the Government notes that the Defendant's conviction for marijuana possession was ten years before its decriminalization.[2]  (*Compare* PSR ¶ 31 *with* ECF No. 76 at 4 n.7.)  When the Defendant possessed marijuana in 2010 in Virginia, it was illegal to do so in that state and many others.  The Defendant chose to engage in illegal conduct and break the law—a pattern of events that has repeated itself over and over for the last ten years.  A subsequent change in the law a decade later does not obviate the Defendant's

---

[1] The Government also notes that the facts underlying the Defendant's 2018 conviction for illegally possessing a firearm show that the Defendant's vehicle contained 8 grams of marijuana and drug paraphernalia, along with the charged firearm.  (PSR ¶ 34.)  These facts show that the Defendant's 2010 marijuana possession charge was no aberration deserving of a downward departure under the Sentencing Guidelines.

[2] The Government believes that the Defendant incorrectly interprets the Introductory Commentary to § 4A.  In considering whether a putative defendant is likely to reengage in recidivism, the Sentencing Commission states that it is focusing on a defendant's prior criminal convictions, because "extant empirical research" has correlated past criminal behavior with future likelihood of engaging in recidivism.  U.S.S.G. § 4A.  While the age of a defendant and drug abuse can also indicate a likelihood to reengage in recidivism, the Sentencing Commission did not focus on this under Chapter Four.  *Id.*  Importantly, the Introductory Commentary does not state that prior criminal convictions can be ignored due to the age of a defendant or drug use at the time of the conviction.  To do so would at best minimize and at worst ignore the societal harms caused by the prior convictions, regardless of a defendant's age or his possible drug abuse.

criminal activity, his conviction, or his properly applied criminal history score of 10 and criminal history category of V.

Accordingly, based on an offense level of **18** and a criminal history category of **V**, the Sentencing Guidelines prescribe a sentence in the range of **51** months to **63** months.

## III.  <u>Legal Standard</u>

In *United States v. Green,* 436 F.3d 449 (4th Cir. 2006), the Fourth Circuit held that after *United States v. Booker,* 543 U.S. 220 (2005), which made the Sentencing Guidelines effectively advisory, the district court is commanded to fulfill congressionally established objectives for sentencing set out in 18 U.S.C. § 3553(a): promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to victims.  *See Green,* 436 F.3d at 455; *see also United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006).

Thus, in conducting a sentencing, district courts must (1) calculate the sentence range recommended by the Sentencing Guidelines; (2) determine whether a sentence within that range and within statutory limits serves the statutory sentencing factors set out in 18 U.S.C. § 3553(a) and, if not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guidelines range better serves the relevant statutory sentencing purposes.  *See Green,* 436 F.3d at 455-56; *Moreland,* 437 F.3d at 432.  The explanation of a variant sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary.  *See Green,* 436 F.3d at 455-56; *United States v. Perez-Pena,* 453 F.3d 236, 241 (4th Cir. 2006).  The district court is given "some latitude," and "a

degree of deference," to tailor a particular sentence to the circumstances. *Green,* 436 F.3d at 456-57; *Moreland,* 437 F.3d 433.

**IV.**     **Relevant Sentencing Considerations Under 18 U.S.C. § 3553(a)**

Over the past ten years, the Defendant has shown repeatedly and consistently that he will illegally possess a firearm.  This is Reeves' fourth firearm-related conviction.  In each case, the Defendant has received minimal sentences that have failed to deter him from illegally possessing guns.  A sentence of 55 months within the applicable Sentencing Guidelines range is necessary to satisfy the goals of sentencing and hopefully deter Reeves from future criminal conduct.

A.     Reeves' Illegal Possession of a Ghost Gun and Ammunition

As set forth in the statement of facts in the plea agreement, when law enforcement searched the Defendant's vehicle, they recovered from his black bag a ghost gun loaded with ten rounds of ammunition in the magazine and one round in the chamber.  As has been amply litigated in this case, the gun Reeves possessed was a "ghost gun"—a pistol or rifle with no serial number engraved on the frame or receiver.  The Defendant could not legally possess a firearm.  So, he resorted to a ghost gun that could be purchased online in a parts kit and assembled at home.  A ghost gun was the Defendant's choice of firearm because his lengthy criminal history would have been flagged in a background check and would have precluded him from legally buying a conventional firearm.  For the Defendant, a ghost gun provided him access to a firearm that he would otherwise be unable to obtain.

A ghost gun like the one the Defendant possessed accepts the same type of ammunition as a conventional firearm.  (ECF No. 61-1 ¶ 6.)  The Defendant's ghost gun accepted ".40 caliber ammunition used in a conventional firearm and included a Glock magazine." (*Id.* ¶ 7.)  And, the Defendant took advantage of that, loading his firearm with ten rounds in the magazine and one

live round in the chamber—ready to fire.  As an individual with an extensive criminal history, the Defendant exemplifies the type of individual that Congress sought to keep firearms out of the hands of when it enacted the Gun Control Act.  His conduct—possessing a loaded firearm in a vehicle—is one that is inherently dangerous to society—a serious offense.

        B.      <u>The Necessity for the Requested Sentence</u>

As set forth above, the Defendant's offense was a serious one.  The Defendant's significant criminal history evidences why a sentence within the Sentencing Guidelines is required—to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of this Defendant.

The Defendant has convictions for possession and distribution of controlled substances, (PSR ¶¶ 31, 36), possessing or issuing forged currency, (PSR ¶ 35, 39), and most importantly, for illegally possessing a firearm.  In August 2011, the Defendant was convicted and fined in the Fairfax General District Court for carrying a concealed weapon.  (PSR ¶ 33.)  Four years later, in December 2015, the Defendant was charged with illegally possessing a firearm in Prince George's County Circuit Court.  (PSR ¶ 34.)  Following a traffic stop, the Defendant was found possessing a black semiautomatic handgun, a magazine, and 18 rounds of ammunition as well as drugs and drug paraphernalia.  The Defendant was sentenced to five years, all but 300 days suspended, and 18 months unsupervised probation.  (*Id.*)  A year later, in December 2016, the Defendant was charged with carrying a pistol without a license and possession of an unregistered firearm/unlawful possession of a firearm in D.C. Superior Court.  (PSR ¶ 40.)  Mirroring the facts in this case and his 2015 arrest, law enforcement conducted a traffic stop on the Defendant's vehicle.  A black loaded handgun with an extended magazine was observed on the driver's floorboard.  Upon searching the vehicle, law enforcement recovered an unloaded 12-gauge shotgun with a tactical

flashlight and sight attached.  The Defendant was sentenced in May 2017 to 6 months incarceration and 3 years supervised release.  (*Id.*)  Approximately a year after this conviction, and while on supervised release for this gun possession offense (as well as other offenses), the Defendant was found with the instant loaded ghost gun in his vehicle.

For each of his prior criminal offenses, the Defendant has received lenient sentences.  In response to these lenient sentences, the Defendant has continued to reengage in recidivism, demonstrating a lack of respect for the law.  A sentence of 28 months would send the same wrong message to this Defendant—one who has habitually shown that he will break the law to possess a firearm.  In contrast, a sentence of 55 months will hopefully be sufficient to demonstrate to this Defendant that his decision to continue to illegally possess firearms will be met with serious consequences.  Such a sentence will be sufficient, but not greater than necessary, to promote respect for the law and provide just punishment for this serious offense.  The Defendant appears to be bright, industrious, and has talents such that he can stay on the right side of the law and not continue to re-offend.  It is the Government's hope that a sentence of 55 months will provide sufficient specific deterrence for this Defendant, protecting the public from any further crimes of his.  Additionally, as has been previously briefed for the Court, ghost guns like the one found in the Defendant's possession are being increasingly recovered by law enforcement from criminals and at crime scenes.  (*See* ECF Nos. 29 at 32; 29-3; 42 at n.7; 42-3.)  A serious sentence in this case will provide necessary general deterrence, putting prohibited individuals like the Defendant on notice that the possession of ghost guns is both illegal and will result in serious criminal penalties.

**V.**     <u>**Forfeiture Judgment and Restitution**</u>

The Government asks the Court to incorporate the motion for forfeiture of property and preliminary order of forfeiture, filed on November 25, 2020, into the sentencing proceeding. (ECF No. 75.)

**VI.**     <u>**Conclusion**</u>

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully submits that a sentence of **55 months in prison, followed by 3 years of supervised release**, as recommended by Probation, is sufficient but not greater than necessary to meet the purposes of sentencing as enumerated in the § 3553(a) factors.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By:     /s/ _____
Rajeev R. Raghavan
Erin B. Pulice
Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on September 16, 2021, and thus served upon defense counsel.

_____/s/_____

Rajeev R. Raghavan
Assistant United States Attorney
